DSS:TF:BDM
F.# 2013R01046

FILED
CLERK

2015 MAY 18  PM 3: 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

AHMAD SHEIKHZADEH,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 15-182 (S-1)(PKC)
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b), 1957(a), 1957(b), 1957(d)(1) and
3551 et seq.; T. 21, U.S.C., § 853(p); T. 26,
U.S.C., § 7206(2); T. 28, U.S.C., § 2461(c);
T. 50, U.S.C., § 1705)

THE GRAND JURY CHARGES:

At all times relevant to this Superseding Indictment, unless otherwise indicated:

INTRODUCTION

1.     The defendant AHMAD SHEIKHZADEH, a citizen of the United States and resident of New York, New York, worked as a consultant to the Government of Iran's Permanent Mission to the United Nations ("IMUN") in New York, New York.

2.     The IMUN paid the defendant AHMAD SHEIKHZADEH a regular salary, in cash, approximately once per month, typically through an intermediary who was also an employee of the IMUN. SHEIKHZADEH would then deposit his cash salary into a checking account at Citibank ("the Citibank account").

3.     Distinct from his work at the IMUN, the defendant AHMAD SHEIKHZADEH also conducted money remitting services for two co-conspirators located in the United States, whose identities are known to the Grand Jury, and who wished to make investments in Iran. These co-conspirators provided SHEIKHZADEH with cash or personal

checks, which were then deposited in the Citibank account in the United States. SHEIKHZADEH then directed another co-conspirator located in Iran, whose identity is also known to the Grand Jury, to make disbursements from one or more accounts at Iranian banks that SHEIKHZADEH controlled, to recipients in Iran designated by his co-conspirators in the United States, in amounts corresponding to the deposits made into the Citibank account. At times, SHEIKHZADEH's co-conspirator in Iran also disbursed funds at SHEIKHZADEH's direction and provided cash to a fourth co-conspirator, whose identity is known to the Grand Jury.

4. Thereafter, the defendant AHMAD SHEIKHZADEH transferred the proceeds of this remitting activity from the Citibank account to a brokerage account he controlled at TD Ameritrade ("the TD Ameritrade account").

5. The defendant AHMAD SHEIKHZADEH did not obtain any license from the Department of Treasury ("the Treasury Department"), through the Office of Foreign Assets Control ("OFAC"), to authorize the activities described in paragraph three above.

THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT

6. Pursuant to the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq., the President of the United States was granted the authority to deal with unusual and extraordinary threats to the national security, foreign policy and economy of the United States. Under IEEPA, the President could declare a national emergency through Executive Orders that had the full force and effect of law. IEEPA was in effect during all times relevant to this Superseding Indictment.

## THE IRANIAN TRANSACTIONS AND SANCTIONS REGULATIONS

7. On March 15, 1995, the President issued Executive Order 12957, finding that the actions and policies of the Government of Iran constituted an unusual and extraordinary threat to the national security, foreign policy and economy of the United States and declared a national emergency to deal with the threat. Executive Order 12957, as expanded and continued by Executive Orders 12959 and 13059, was in effect at all times relevant to this Superseding Indictment.

8. Pursuant to the Executive Orders noted above, the Treasury Department, through OFAC, promulgated the Iranian Transactions Regulations ("ITR"), 31 C.F.R. §§ 560.101 et seq. In October 2012, the ITR were renamed the Iranian Transactions and Sanctions Regulations ("ITSR").

9. The ITSR generally prohibited "the exportation . . . or supply, directly or indirectly, from the United States or by a United States person, wherever located, of any goods, technology, or services to Iran" without having first obtained a valid license from OFAC. 31 C.F.R. § 560.204. The ITSR further prohibited any "new investment" in Iran, including any "commitment or contribution of funds," without a valid OFAC license. 31 C.F.R. §§ 560.207, 560.316. Any transaction that evaded or avoided, or had the purpose of evading or avoiding, the ITSR was prohibited, as was the facilitation or financing by a United States person of any transaction by a foreign person, if the United States person would himself be prohibited from engaging in that transaction without an OFAC license. 31 C.F.R. §§ 560.203, 560.208. These provisions of the ITSR were in effect during all times relevant to this Superseding Indictment. Beginning in October 2012, the ITSR also specifically

3

prohibited United States persons from transacting in or making disbursements from accounts at Iranian financial institutions under their control. 31 C.F.R. § 560.211(b).

## COUNTS ONE THROUGH FIVE
(Aiding and Assisting in the Presentation of False Individual Income Tax Returns)

10. The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

11. On or about the dates set forth below, within the Southern District of New York, the defendant AHMAD SHEIKHZADEH did knowingly and willfully aid and assist in, and procure, counsel and advise the preparation and presentation under, and in connection with matters arising under, the internal revenue laws, of returns, claims and other documents, specifically United States Individual Income Tax Return Forms 1040 for the defendant AHMAD SHEIKHZADEH for the tax year periods set forth below, which returns were false and fraudulent as to material matters, in that the returns reported that the defendant AHMAD SHEIKHZADEH received business income or other income in the amounts set forth below when, as the defendant AHMAD SHEIKHZADEH then and there well knew and believed, he received business income or other income substantially in excess of such amounts:

4

| COUNT | APPROXIMATE DATE | TAX YEAR PERIOD ENDING | REPORTED BUSINESS OR OTHER INCOME |
|---|---|---|---|
| ONE | April 15, 2009 | December 31, 2008 | $23,000 |
| TWO | April 15, 2010 | December 31, 2009 | $25,000 |
| THREE | April 15, 2011 | December 31, 2010 | $27,000 |
| FOUR | April 15, 2012 | December 31, 2011 | $32,000 |
| FIVE | April 15, 2013 | December 31, 2012 | $32,000 |

(Title 26, United States Code, Section 7206(2); Title 18, United States Code, Sections 3551 et seq.)

## COUNT SIX
(IEEPA Conspiracy)

12. The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

13. In or about and between October 2007 and May 2013, both dates being approximate and inclusive, within the Southern District of New York, the defendant AHMAD SHEIKHZADEH, together with others, did knowingly, intentionally and willfully conspire to export services to Iran, make new investments in Iran, including commitments and contributions of funds, and transact in and make disbursements from one or more Iranian bank accounts under the defendant AHMAD SHEIKHZADEH's control, without first obtaining the required license from the Treasury Department.

(Title 50, United States Code, Section 1705; Title 18, United States Code, Sections 3551 et seq.)

5

## COUNT SEVEN
### (Money Laundering)

14. The allegations contained in paragraphs one through nine are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between October 2007 and May 2013, both dates being approximate and inclusive, within the Southern District of New York, the defendant AHMAD SHEIKHZADEH did knowingly engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds, in and affecting interstate and foreign commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: violations of the International Emergency Economic Powers Act, Title 50, United States Code, Section 1705.

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SIX

16. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count Six, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of any such offense to forfeit any property, real or personal, constituting or derived from proceeds traceable to such offense.

6

17. If any of the above-described forfeitable property, as a result of any act or omission of the defendant :

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property as described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT SEVEN

18. The United States hereby gives notice to the defendant that, upon this conviction of the offense charged in Count Seven, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any and all property, real or personal, involved in such offense, or any property traceable to such offense.

19. If any of the above-described forfeitable property, as a result of any act or omission of the defendant :

7

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property as described in this forfeiture allegation.

      (Title 18, United States Code, Sections 982(a)(1) and 982(b); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

8

F. #2013R01046
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN District of NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

AHMAD SHEIKHZADEH,

Defendant.

## SUPERSEDING INDICTMENT

( T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b), 1957(a), 1957(b), 1957(d)(1) and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 26, U.S.C., § 7206(2); T. 28, U.S.C., § 2461(c); T. 50, U.S.C., § 1705)

A true bill.

_____ Foreperson

Filed in open court this _____ day,

of _____ A.D. 20 _____

_____ Clerk

Bail, $ _____

Daniel Silver/Tali Farhadian, Assistant U.S. Attorneys (718) 254-6034/6290