# Steve Zissou & Associates

42-40 Bell Boulevard | Suite 302 | Bayside | New York | 11361| 718.279.4500 | stevezissou@stevezissouesq.com

April 26, 2018

**BY ECF**

Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States of America v. Ahmad Sheikhzadeh*
        Docket Number 15-Cr-182 (PKC)

Dear Judge Chen:

I respectfully submit this brief letter/memorandum outlining some of the issues raised by the defense at yesterday's status conference.

## I.   The Statutory Framework of the Second Chance Act

Congress delegated inmate placement authority to the Bureau of Prisons in two statutes: 18 U.S.C. §§ 3621(b) and 3624(c). Under these statutes, the Bureau of Prisons ("BOP" or "Bureau") must assess an inmate's facility placement at two points in his/her sentence – at the beginning and near the end. Under § 3621(b), the Bureau is required to make an initial placement decision at the start of the inmate's prison term designating "the place of the prisoner's imprisonment." For the remainder of the inmate's sentence, until the inmate's release date nears, § 3621(b) authorizes the Bureau to transfer an inmate to another facility, including a halfway house, at any time.

When the Bureau makes a designation decision – whether it be an initial placement or a transfer – it must choose a correctional facility that is "*appropriate and suitable*" to the individual inmate. 18 U.S.C. § 3621(b). In doing so, the Bureau must consider five enumerated factors:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission.

18 U.S.C. § 3621(b).

Though the decision to transfer an inmate after his/her initial placement is generally left within the Bureau's discretion, 18 U.S.C. § 3624(c) creates a second point in an inmate's term at which the Bureau is required to evaluate placement. Specifically, § 3624(c), as amended by the Second Chance Act ("SCA"), directs the Bureau to consider an inmate's need to prepare for transition from confinement back into the community:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

### A.      The Bureau's Regulations and Policies Implementing the SCA

The SCA directed the Bureau to promulgate regulations that "shall ensure that placement in a community correctional facility by the Bureau of Prisons is – (A) conducted in a manner consistent with section 3621(b) of this title [18 U.S.C. § 3621(b)]; (B) determined on an individual basis, and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." The SCA required the Bureau to promulgate the regulations within 90 days of the statute's April 9, 2008, enactment.

### B.      The BOP Guidance Memorandums

Since the Act was passed, the Bureau has circulated guidance memorandum instructing Bureau staff on how to implement the SCA. The most recent memorandum that counsel is aware of is dated May 24, 2013, and seems to incorporate all prior memoranda. This memorandum is available at https://www.bop.gov/foia/rrc_hc_guidance_memo.pdf.

The memos instruct staff that the Bureau is authorized under § 3624(c) to make pre-release halfway house placements for any inmate for up to the final 12 months of the inmate's sentence. It directs that § 3624(c) reviews should be conducted months before each inmate's projected release date and that placement decisions should be made in accordance with Bureau Program Statement 7310.004 (Community Corrections Center (CCC) Utilization and Transfer Procedure), as modified by the implementing instructions.

Each inmate must receive an individualized § 3624(c) review, and that staff must consider all five of the § 3621(b) factors, as well as the other factors listed in Program Statement 7310.004. The most recent memorandum reiterates the need to ensure that all inmates are considered for the maximum pre-release (12 months) as the SCA allows. Among other relevant directives, the memorandum provides that "*For low need/low risk inmates, home confinement is the preferred pre-release option*" and that "[t]his option

*is currently underutilized.*"[1] Moreover, section 3624(c) "imposes an affirmative duty on the Bureau to consider placing an inmate in community confinement." *Rodriguez v. Smith*, 541 F.3d 1180, 1185 (9th Cir. 2008); *McGee v. Thomas*, 2009 U.S. Dist. LEXIS 62617 (D. Or. July 22, 2009). The Second Chance Act increased the maximum period of RRC placement from six to twelve months. However, "the BOP retains discretion under the Second Chance Act to decide whether and when an inmate should be placed at an RRC." *United States v. Accardi*, No. 11 Cr. 12 (RMB), 2013 U.S. Dist. LEXIS 65833, 2013 WL 1903559, at *1 (S.D.N.Y. May 7, 2013) (quoting *Pasonick v. Strada*, No. 12 Civ. 6204 (SLT), 2013 U.S. Dist. LEXIS 14867, 2013 WL 431332, at *2 (E.D.N.Y. Feb. 4, 2013)). *Bernard v. Roal,* 716 F. Supp. 2d 354, 359 (S.D.N.Y. 2010) (citation omitted); see also *Mitts v. Strada*, No. 12 cv 5538 (RRM), 2013 U.S. Dist. LEXIS 27724, 2013 WL 7647393 (E.D.N.Y. Feb. 28, 2013).

The SCA requires the Bureau of Prisons ("BOP") to make individual determinations that ensure placement of an inmate in pre-release community corrections for a period "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." Title 18 U.S.C. §3624(c)(6)(C). That Congress intended the overall effect of the SCA to encourage early release for a vast category of inmates cannot be denied given other changes to the applicable laws. For example, section 253 of the Act amended 18 U.S.C. § 3672 to authorize the Director of the Administrative Office of the U.S. Courts to contract for "treatment, equipment and emergency housing, corrective and preventative guidance and training, and other rehabilitative services designed to protect the public and promote the successful reentry of the offender into the community." And in October of 2008, the Judicial Administration and Technical Amendments Act of 2008, Pub. L. No. 110-406 (October 13, 2008), further amended 18 U.S.C. § 3672 to authorize the Director to directly expend funds for emergency reentry services. The Act also modified pretrial services contracting authority under 18 U.S.C. § 3154 in a fashion similar to the changes made to §3672.

A review of the factors set forth in § 3621 strongly suggests that Dr. Sheikhzadeh is an appropriate candidate for placement in home/community confinement.

## II.   EXHAUSTION

Ordinarily, a prisoner must exhaust any available administrative remedy that might otherwise be available.  However, the failure to exhaust may be excused if: (i) the claim is collateral to a demand for benefits, see, e.g., *Bowen v. City of New York*, 476 U.S. 467, 475-76 (1986); (ii) exhaustion would be futile, see, e.g., *Mathews v. Diaz*, 426 U.S. 67, 72, 76 (1976) (holding that exhaustion would be futile because the Secretary had no power to rule on statute's constitutionality); or (iii) requiring administrative exhaustion would cause the petitioner irreparable harm such that no post hoc relief would be adequate, see, e.g., *Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions."); *State of N.Y. v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990); *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) ("When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the

---

[1] See: BOP memo dated 5/24/2013 at page 2. Available at: https://www.bop.gov/foia/rrc_hc_guidance_memo.pdf

Honorable Pamela K. Chen
April 26, 2018

proceedings until the petitioner has exhausted remedies, unless exhaustion is excused.") (emphasis added).

   Dr. Sheikhzadeh is currently detained in a facility that does not appear to be "*appropriate and suitable*" to the individual inmate as required by 18 U.S.C. § 3621(b).  He is suffering and will continue to suffer, irreparable harm each additional day that he continues to be detained that has already exceeded the twelve-month threshold recognized by the SCA. To require Dr. Sheikhzadeh to exhaust his administrative remedies through a process that could take several more months would further prolong his detention in violation of the SCA. See *Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995) (indicating that exhaustion of administrative remedies is not required when "irreparable injury may occur without immediate judicial relief").

   I trust that this brief review of the applicable law is helpful to the Court.

   Thank you very much for your consideration in this matter.

                    Respectfully submitted,

                        /s/

                     Steve Zissou

cc: all parties by ecf